UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAHAR HUSSEIN YOUNES,

                    Petitioner,

                                          Case Number 16-13556
v.                                          Honorable David M. Lawson

LORETTA LYNCH, United States Attorney General,
JEH CHARLES JOHNSON, Secretary, United States
Department of Homeland Security; REBECCA
ADDUCCI, Director, Detroit Field Office,
United States Immigration and Customs Enforcement,
and MATTHEW M. SAXTON, Sheriff of Calhoun
County, Michigan,

                    Respondents.

_____/

## OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

       Petitioner Sahar Hussein Younes is in the custody of the United States Immigration and

Customs Enforcement agency (ICE) and presently lodged in the Calhoun County, Michigan, jail,

awaiting deportation to her home country of Lebanon.  She has been in custody since January 2016,

and she seeks release under supervision via her petition for a writ of habeas corpus filed under 28

U.S.C. § 2241 on October 4, 2016.  After the government filed a response, the Court held a hearing

on the petition in open court on November 14, 2016.  The ICE agency, through Deportation Officer

Lucas Wandyg, has been working since March 23, 2016 to obtain travel documents from the

government of Lebanon, but, despite doing everything in its power to obtain those travel papers, it

has not been successful.  Nor has the government been able to inform the petitioner or the Court

when one might expect such documents to issue.  The Court determines, therefore, that the

government has not shown that there is any significant likelihood that the petitioner will be sent to

Lebanon in the reasonably foreseeable future. The petition will be granted and the petitioner ordered released on conditions.

<div align="center">I.</div>

Petitioner Sahar Hussein Younes is a citizen of Lebanon. She was born in 1977 in Majdal Tarchich, Lebanon, and presently is 38 years old. She entered the United States as a lawful permanent resident in 1995. Until earlier this year, she lived in Dearborn, Michigan with her immediate family, which includes her husband, a United States citizen, and her three minor children, who also are U.S. citizens. Numerous members of her extended family also are lawful residents or citizens of the United States. On February 29, 2016, the petitioner was ordered removed from the country, after a conviction for student loan fraud. She did not challenge the order of removal, because, she contends, "she [wants] to return to Lebanon as expeditiously as possible." Since the order of deportation was entered, she has been detained at the Calhoun County Jail in Battle Creek, Michigan, under ICE's custody. During her detention the petitioner has undergone two "custody reviews," at 90 days and 180 days, but on both occasions her requests for supervised release were denied by ICE officials.

Deportation Officer Wandyg states that he made his initial request to the Lebanese Consulate for travel documents on March 23, 2016. When he followed up with an email inquiry, a consulate representative responded with a request for a cashier's check and four photographs of the petitioner, which Officer Wandyg promptly furnished. Officer Wandyg made additional inquiries, but he did not receive any response until May 16, 2016, when a consulate representative called to state that documents would issue in "about two months." Since then, Officer Wandyg has contacted the Lebanese Consulate in July and August, but has not received any information that the issuance of

the travel documents was forthcoming.  His September 30 inquiry went unanswered, as did his October 18 inquiry.

While she has been detained, the petitioner's attorney has communicated with officials of the Lebanese consulate, who have confirmed that they have all the information needed to process the petitioner's travel authorization.  Petitioner's counsel also has corresponded with the ICE case agent assigned to the petitioner's removal proceeding, who confirmed that nothing remains to be done by the petitioner or United States officials to facilitate the removal.  However, no travel documents have yet been produced, and the Lebanese consulate has not suggested any date by which they will be produced, despite the passage of more than eight months since the initial request for authorization.  On August 31, 2016, the petitioner's attorney spoke by telephone with a consulate official who stated that she had "no idea how long it would take" for an authorization to be issued, but who nevertheless assured petitioner's counsel that the petitioner would "eventually receive one."

The petitioner suggests that the delay may be due in part to the need for multiple domestic government agencies in Lebanon to sign off on her authorization to return to the country.  She believes that review has been complicated by the fact that Lebanese officials at some point erroneously assigned her a "lot number" that was related to her former husband, rather than the "lot number" that currently is or should be assigned to her, and the confusion over the proper "lot number" that the petitioner should be assigned has delayed the needed approvals.

At the hearing, the attorney for the government, responding to the Court's questions, stated that the government has no information that the petitioner is a flight risk or a danger to the community.  The state of the record, all agree, points to the conclusion that as to the request by the

United States for the petitioner, the government of Lebanon has not said "no," but likewise it has not said "yes," and no one can say when an answer will be forthcoming.

On October 4, 2016, the petitioner filed her petition for a writ of habeas corpus seeking release from ICE custody pending deportation. The government filed a response on October 20, 2016, and the petitioner filed a reply on November 3, 2016. The Court held a hearing on the petition in open court on November 14, 2016.

II.

Congress has prescribed that once an alien has been ordered to be deported from our country, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Moreover, "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2). And Congress has authorized the Attorney General (now the Secretary of the Department of Homeland Security) to detain such an alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Secretary] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6). "By its terms, this provision applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary determines to be either a risk to the community or a flight risk." *Clark v. Martinez*, 543 U.S. 371, 377 (2005). The petitioner does not dispute that she falls into the second category of aliens eligible for extended detention under section 1231(a)(6), because she is subject to a final order of removal

-4-

based on her conviction for an "aggravated felony." However, "[i]n *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court interpreted this provision to authorize the Attorney General (now the Secretary) to detain aliens . . . only as long as 'reasonably necessary' to remove them from the country." *Clark v. Martinez*, 543 U.S. 371, 373 (2005) (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court held that reading section 1231(a)(6) to authorize indefinite detention would render the statute unconstitutional. *Zadvydas*, 533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682.

The Supreme Court held in *Zadvydas* that detention of an alien subject to removal due to a criminal conviction will be presumptively reasonable for up to six months. However, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Ibid.* "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Ibid.*

The petitioner agrees that her student loan fraud conviction has subjected her to a final order of removal, and that she may be detained beyond the 90-day removal period under section 1231(a)(6). Nevertheless, it is well established that extended detention under § 1231(a)(6) is presumptively reasonable only up to six months, and that, after six months, continued detention is

no longer authorized where there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. It is undisputed here that the petitioner has been detained longer than the six-month presumptively reasonable period under *Zadvydas*.

There is no bright-line test for measuring the "reasonable time" limitation engrafted onto section 1231(a)(6). *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003) (stating that "courts must examine the facts of each case[] to determine whether there has been unreasonable delay in concluding removal proceedings"). In later cases, however, the Supreme Court has clarified that the reasonableness of the detention must be assessed in light of the constitutional provision that the *Zadvydas* Court found to be in play: the Due Process Clause of the Fifth Amendment that protects the detainee's liberty interest. *Demore v. Kim*, 538 U.S. 510, 527-31 (2003). The Court in *Demore* dealt with the statute that authorized detention without bail of deportable criminal aliens pending their removal proceedings. In finding the aliens' due process argument premature, the Court distinguished *Zadvydas* because deportation of the detainees in that case was found to be "no longer practically attainable," *id.* at 517 (citing *Zadvydas*, 533 U.S. at 690); and, due to the individual circumstances of the two aliens before the *Zadvydas* Court, their detention "was 'indefinite' and 'potentially permanent,'" *id.* at 528 (citing *Zadvydas*, 533 U.S., at 690-91). That was not the case in *Demore*, where the alien was detained pending a removal proceeding with a typical calendar, so that the "detention ha[d] a definite termination point." *Id.* at 529.

The government took Younes into custody for the purpose of deporting her on February 29, 2016. More than eight months now have passed while the petitioner remained in custody awaiting her removal. Despite diligent efforts by the ICE deportation officer, the government has not been able to furnish any evidence that the government of Lebanon will issue travel documents in the

-6-

discernable future.  And although there is no hard evidence either way in the question when or if travel documents will issue, there is a suggestion in the record that bureaucratic complications in Lebanon will delay (or possibly prevent) issuance of the documents "in the reasonably foreseeable future."  The United States has done all it can to procure the documents, and the petitioner has not contributed in any way to the delay.

"Section 2241 of Title 28 of the U.S. Code provides that '[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(a)).  "The statute is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Ibid.* (quoting 28 U.S.C. § 2241(c)).  The Court is satisfied by the evidence — and lack of evidence — in the record that the petitioner has made an adequate showing under *Zadvydas* to obtain release.

The release, however, will be subject to reasonable conditions.  *See* 8 U.S.C.A. § 1231(a)(3) (prescribing conditions for the release of an "alien [who] is not removed within the removal period").                                                    III.

The petitioner is entitled to relief from her detention awaiting issuance of travel documents to her native country of Lebanon.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **GRANTED**.

It is further **ORDERED** that the defendants immediately shall release the petitioner, Sahar Hussein Younes, upon the following conditions:

        A.    The petitioner must appear before an immigration officer periodically for identification;

B.    The petitioner must submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; and

C.    The petitioner must give information under oath about her nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate.

It is further **ORDERED** that the government may apply to the Court to impose additional reasonable restrictions on the petitioner's conduct or activities.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  November 14, 2016

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 14, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

</div>